UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

REFKI KASTRATI,

        Plaintiff,

    v.

PROGRESS OF PEOPLES MANAGEMENT CORP., GLORIA MITCHEL, JEANMARIE, TIM HURLEY, HR DEPARTMENT,

        Defendants.

**MEMORANDUM AND ORDER**

18-CV-6731 (LDH) (LB)

---

LaSHANN DeARCY HALL, United States District Judge:

  Plaintiff Refki Kastrati, proceeding pro se, brings the instant action against Defendants Progress of Peoples Management Corporation ("POP Management"), Gloria Mitchel, Tim Hurley, and Jeanmarie asserting claims for discriminatory discharge, failure to accommodate, and retaliation pursuant to the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101, *et seq.*; retaliation pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; and related claims pursuant to New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL").[1]  Defendants move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint in its entirety.

## BACKGROUND[2]

  Plaintiff was employed with POP Management as a superintendent at its Mary Star of Sea Apartments from September 2012 until he was terminated on December 11, 2017.  (Compl. 7.)

---

[1] Plaintiff also names POP Management's "HR Department" as a defendant.  (*See* Compl.)  Any claims against the HR Department properly lie against POP Management.
[2] The following facts are taken from the complaint and exhibits annexed thereto and are assumed to be true for the purposes of this memorandum and order.  *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (In deciding a motion to dismiss, the "'complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'") (quoting *Chambers v. Time Warner, Inc.*, 282

1

Prior to his work with POP Management, in 2001, Plaintiff was diagnosed with kidney malfunction. (*Id*. 7.) Since 2011, Plaintiff has received dialysis treatments every Monday, Wednesday, and Friday from 4:00 p.m. to 8:15–8:30 p.m. (*Id*.) At his initial interview with Defendants, Plaintiff disclosed his diagnosis and requested his work hours to be from 7:00 a.m. to 3:00 p.m. to allow for his dialysis treatments. (*Id*. 8.) Defendants granted Plaintiff's request. (*Id*. 7.)

On March 15, 2017, Mary Whelan, a POP Management facilities coordinator, conducted a site visit of Mary Star of Sea Apartments. (*See* Compl., Ex. T.) The following day, Whelan emailed Plaintiff, reminding him to: (1) clear all items in the basement by the exit door because their presence violated FDNY regulations; (2) clean up and clear out storage areas and organize space; (3) store all paint supplies; (4) shut off lights that are not being used; (5) keep the basement door locked; and (6) keep the gate in the parking lot locked. (*Id*.)

According to the complaint, Plaintiff was "happily performing all of his duties" until Mitchel was hired as regional property manager, and Plaintiff's supervisor, some "few months" before August 2017. (*See* Compl. 7.) Plaintiff maintains that Mitchel was initially a "nice person" but that once she learned that he was on dialysis, her attitude toward him "changed dramatically," and she began making complaints and lodging false accusations against him. (*Id*.)

The first written accusation was made by Mitchel on July 18, 2017, in the form of a warning notice. (*Id*. 9, Ex. A.) In the warning notice, Mitchel documented that Plaintiff received a verbal warning for his failure to clock in and out of work on May 30, July 3, and July 4, 2017. (*Id*.) Plaintiff claims that Mitchel also accused him of not being on-site on September 6. (Compl. 10.)

---

F.3d 147, 152–153 (2d Cir. 2002)). Citations to the complaint refer to the pagination assigned by the Court's ECF system.

On one occasion, Mitchel yelled "why did you accept the position if you are sick, you need to be at a work site 24/7!" (*Id*. 8.) On September 12, Plaintiff received a notice of Final Written Warning & Probation in Lieu of Termination for his failure to follow agency procedures. (Compl. 9, Ex. B.) Plaintiff was placed on probation for 90 days. (*Id*.)

On September 13, 2017, Plaintiff complained to human resources about Mitchel's treatment of him and requested the paperwork necessary to apply for leave under the Family Medical Leave Act ("FMLA"). (Compl. 10, Ex. E.) On October 10, 2017, Plaintiff gave human resources and Mitchel a Certification of Health Care Provider form. (*Id*. 11.) Plaintiff's medical provider certified that Plaintiff requires dialysis treatment every Monday, Wednesday, and Friday from 4:00 p.m. to 8:15–8:30 p.m. (*Id*. Ex. E.) Plaintiff alleges that after he requested FMLA paperwork and complained about Mitchel's treatment of him, he began receiving more site visits than usual. (Compl. 11, 12.)

Mitchel conducted a site visit on November 8, 2017. (Compl. Ex. G). Upon her arrival at 8:45 a.m., she found the parking lot gate and back door to the building open and Plaintiff's car "gone." (*Id*.) Plaintiff informed Mitchel that he was completing work in an apartment unit. (*Id*.) When Mitchel asked for a work order as verification of Plaintiff's whereabouts, Plaintiff advised her that he "does not write English good." (Compl. 11.) Mitchel reminded Plaintiff that she advised him on September 5, 2017, that he must consistently prepare work orders when completing repairs in the building. (Compl. Ex. G.) Mitchel informed human resources of her interaction with Plaintiff, stating that Plaintiff responded to her reminder by saying, "[i]f that is what I must do then you could fire [me] now." (*Id*.) Plaintiff alleges that Mitchel "flipp[ed] his words to her own words." (Compl. 11.)

3

Plaintiff applied for FMLA leave on November 9, 2017, to allow for his dialysis on Mondays, Wednesdays, and Fridays. (Compl. Ex. I.) Plaintiff's request for intermittent leave was approved on November 14. (*Id*.) On November 27, Hurley conducted a site visit where he observed Plaintiff's electrical scooter charging in a gas meter room. (Compl. 13.) On December 4, Mitchel discovered that Plaintiff left a grass cutter in the gas meter room in violation of the New York City Building Code. (Compl., Exs. N, S.) Plaintiff was terminated on December 11, 2017, due to "continued unsatisfactory work performance and violation of agency policy." (Compl., Ex. K.)

## STANDARD OF REVIEW

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of defendants' liability for the alleged misconduct. *Id*. While this standard requires more than a "sheer possibility" of defendants' liability, *id*., "[i]t is not the Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss. *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999). Instead, "the Court must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the Court must accept the factual allegations of the complaint as true." *Id*. (citations omitted).

Moreover, where, as here, a plaintiff is proceeding pro se, his pleadings "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*,

4

470 F.3d 471, 474 (2d Cir. 2006)).  A pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Boykin v. KeyCorp*, 521 F.3d 202, 213–14 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 55 U.S. 89, 94 (2007) (per curiam)).  This rule is "particularly so when the pro se plaintiff alleges that [his] civil rights have been violated."  *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)).  Still, "even pro se plaintiffs asserting civil right[s] claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'"  *Jackson v. NYS Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

### I. The ADA

The ADA provides recourse to individuals who were discriminated against on the basis of their disabilities in employment; public services, programs, or activities; or public accommodations.  *Mary Jo. C. v. New York State and Local Retirement System*, 707 F.3d 144, 152 (2d Cir. 2013) ("[The ADA] forbids discrimination against persons with disabilities in three major areas of public life: employment, which is covered by Title I of the statute; public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III.").  "A qualified individual can base a discrimination claim on any of three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation."  *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009).  Plaintiff asserts claims based on intentional discrimination and failure to accommodate.

5


### A.     Discriminatory Discharge

A prima facie claim for discrimination against an employer under the ADA requires a showing that: "(1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by [his] employer; (3) [he] was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) [he] suffered an adverse employment action; and (5) the adverse action was imposed because of [his] disability." *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015). To survive a motion to dismiss, a plaintiff need only allege facts which plausibly suggest that he "suffered [an] adverse employment action because of his disability." *Giordano v. City of New York*, 274 F.3d 740, 747 (2d Cir. 2001) (internal quotations marks omitted)).

Defendants urge the Court to dismiss Plaintiff's ADA discrimination claim on the grounds that Plaintiff has failed to sufficiently allege an inference of discrimination. Specifically, relying on *Powell v. Merrick Acad. Charter Sch.*, Defendants argue that as a matter of law, "no inference of discrimination arises when gradual adverse job actions began before a plaintiff discloses his disability." (Defs.' Mem. L. Supp. Mot. Dismiss ("Defs.' Mem.") 9–10, ECF No. 25.) Defendants' argument is flawed. *Powell* does not stand for the proposition as asserted by Defendants. In *Powell*, the court was tasked with determining whether the alleged temporal proximity between the adverse action and the disclosure of the disability was sufficient to satisfy the causal nexus requirement of an ADA discrimination claim. *Powell v. Merrick Acad. Charter Sch.*, 16-CV-5315 (NGG) (RLM), 2018 WL 1135551, at *6 (E.D.N.Y. Feb. 28, 2018). The court noted that, while allegations of temporal proximity can theoretically be sufficient to plead the requisite causal nexus, those allegations were undermined in that case. *Id.* at *7. Thus, contrary to Defendants' contention, *Powell* actually stands for the proposition that

temporal proximity alone is not enough to give rise to an inference of discrimination when gradual adverse job actions began well before the plaintiff became disabled. *See id*. at 7–8. The Court assumes that Defendants simply, yet inexplicably, misread *Powell*. In any event, in the face of an accurate articulation of *Powell*, the case proves inapposite. Here, unlike in *Powell*, Plaintiff is not seemingly relying only on temporal proximity to establish a causal link. Instead, Plaintiff's complaint includes an allegation that Mitchel made at least one explicit comment concerning his alleged disability that might operate to create a direct causal relationship. (*See* Compl. 8.) Moreover, Plaintiff's diagnosis predated his employment, and his disclosure of his treatment schedule occurred at his initial meeting with Defendants at his job interview. (*Id*. 7.)

Separate and apart from Defendants' misuse of *Powell*, Defendants' argument appears predicated upon Defendants' misreading, or at least constrained reading, of the facts alleged in the complaint. According to Defendants, Plaintiff disclosed to Mitchel in August 2017 that he required dialysis treatment three days per week. (Defs.' Mem 9.) Directing the Court to the reminder received by Plaintiff in March 2017, and the warning notice dated July 18, 2017, Defendants maintain that Plaintiff had been subject to progressive adverse jobs actions before his August 2017 disclosure to Mitchel. (Defs.' Mem. 10.) This is simply not what is alleged in the complaint. What Plaintiff actually alleges is that it was "around August 2017" that Mitchel began making false complaints against him. (Compl. 7.) Plaintiff does not allege any time frame in which Mitchel learned of his dialysis treatment. He plainly alleges, however, that she began making false accusations against him only after she learned he was on dialysis. (*Id*.) Importantly, Plaintiff also expressly alleges that Mitchel made the first written accusation against him on July 18, 2017. (*Id*. 9.) It is therefore reasonable to infer (particularly given Plaintiff's pro se status) that Mitchel learned that he was on dialysis some time before she issued the July

7

18 warning notice. As such, contrary to Defendants urging, the July 18, 2017 warning notice cannot support an argument that Plaintiff had been subject to progressive adverse job actions prior to Mitchel's knowledge of Plaintiff's dialysis treatments. Defendants are therefore left with Whelan's March 16, 2017 email to Plaintiff reminding him to perform certain job duties, which itself is plainly not an adverse job action. *See Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 225 (2d Cir. 2006) ("An adverse employment action within the meaning of the relevant legal standards is generally characterized as a materially adverse change in the terms and conditions of employment."). Accordingly, Defendants' argument that Plaintiff was subject progressive adverse job action fails to defeat any inference of discrimination.[3]

### B. Failure to Accommodate

To state a claim for failure to accommodate, a plaintiff must allege that: "(1) [he] is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004). Under a liberal reading of the complaint, the Court construes two requests at issue—Plaintiff's request for a 7:00 a.m. to 3:00 p.m. work schedule and his request for FMLA leave. Specifically, Plaintiff alleges that at his initial interview, he requested a 7:00 a.m. to 3:00 p.m. work schedule so that he could receive dialysis on Mondays, Wednesdays, and Fridays from 4:00 p.m. to 8:15–8:30 p.m. (Compl. 8.) And, on November 9, Plaintiff requested intermittent

---

[3] The Court does not determine that had it undertaken its own searching analysis of Plaintiff's claim, it would have found that Plaintiff's allegations were sufficient to state a claim. The Court simply rejects the argument for dismissal advanced by Defendants. Defendants advance the same arguments for dismissal of Plaintiff's claims under NYSHRL and NYCHRL for discriminatory discharge. (*See* Defs.' Mem. 10.) For the same reasons, the Court rejects those arguments. *See infra* IV.

8

FMLA leave, which was supported by a Certification of Health Care Provider form indicating that Plaintiff requires dialysis treatment. (Compl. Exs. I, E.) Neither of these requests were denied. Indeed, according to the complaint, Plaintiff had from the outset been given a 7:00 a.m. to 3:00 p.m. work schedule, specifically to allow for his dialysis treatments. (Compl. 8) And, Plaintiff was granted FMLA leave on November 14. (*Id*. Ex. I.) On this basis, Plaintiff fails to state a claim. *See Licatesi v. Penauille Servisair*, 08-CV-1665 (DLI) (RER), 2010 WL 11627294, at *5-6 (E.D.N.Y. Mar. 17, 2010) (dismissing claim where it was uncontested that employer accommodated plaintiff's physical condition by allowing him to return to work post-injury on the terms recommended by his physician, which involved appointing him to "light duty"); *Wilson v. Family Dollar Stores of New York, Inc*., 06-CV--639 (DGT), 2008 WL 4426957, at *5 (E.D.N.Y. Sept. 25, 2008) (dismissing claim because, *inter alia*, the only accommodation that plaintiff requested—that she not be required to unload trucks and lift heavy objects—was granted), *aff'd sub nom*. *Wilson v. Family Dollar Stores*, 374 F. App'x 156 (2d Cir. 2010).

### C. Retaliation

The elements of a retaliation claim under the ADA are "(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 148 (2d Cir. 2002). Defendants argue that Plaintiff fails to allege any causal connection between a protected activity and his termination. (Defs.' Mem. 11.) The Court agrees.

Defendants maintain that it is unclear from the face of the complaint what Plaintiff maintains constituted his protected activity. (*Id*. 11.) For this reason perhaps, Defendants train their argument on Plaintiff's request for FMLA leave, made on November 9. (*Id*. 12.) They need not have. The term "protected activity" refers to "action taken to protest or oppose statutorily prohibited discrimination, and may take the form of either formal or informal complaints." *Hernandez v. Int'l Shoppes, LLC*, 100 F. Supp. 3d 232, 267 (E.D.N.Y. 2015) (quoting *Chan v. Donahoe*, 63 F.Supp.3d 271, 294 (E.D.N.Y. 2014). A request for FMLA leave, without more, cannot constitute a protected activity for the purposes of an ADA retaliation claim. That said, Defendants ignore altogether Plaintiff's allegation that on September 13, 2017, he complained to human resources about Mitchel's treatment of him. (Compl. 10.) Liberally construed, this complaint constitutes a protected activity. And of course, Plaintiff was subsequently terminated on December 11. Nonetheless, Plaintiff's September 13 complaint is insufficient to support a claim of retaliation because, in the complaint here, there are no allegations that might support a causal nexus between Plaintiff's September 13 complaint and his December 11 termination. That said, as this Court and other courts in this circuit have found, a temporal lapse in excess of two months is too great to allow an inference of causation. *See Ferraro v. New York City Dep't of Educ.*, 404 F. Supp. 3d 691, 716 (E.D.N.Y. 2017) (DeArcy Hall, J.) (finding four-month gap too attenuated on a motion for summary judgment), *aff'd*, 752 F. App'x 70 (2d Cir. 2018); *Vale v. Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 441 (E.D.N.Y. 2015) (collecting cases). Here, the September 13 complaint predated Plaintiff's termination by approximately three months. Accordingly, Plaintiff's ADA claim for retaliation is dismissed.

To the extent Plaintiff intended to bring an FMLA retaliation claim, it too fails. To establish an FMLA retaliation claim, a plaintiff must demonstrate: (1) he exercised rights protected under the FMLA; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004). Yet, as Defendants aptly note, in the context of other claims for retaliation, the Second Circuit has held that "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001), *as amended* (June 6, 2001).

Here, generously construed, Plaintiff's allegations purportedly supporting an inference of retaliatory intent rest exclusively on timing. However, Plaintiff was subject to gradual adverse actions well before he ever requested FMLA leave on November 9. On July 18, 2017, he received a written warning notice evincing that he had received verbal warnings for his failure to clock in and out of work on May 30, July 3, and July 4, 2017. (Compl. Ex. A.) The notice warned Plaintiff that if his pattern of poor performance continued, he would be "subject to further disciplinary action, up to and including termination of employment." (*Id*.) Plaintiff subsequently received a notice of Final Written Warning & Probation in Lieu of Termination on September 12 for failing to complete repairs on two apartments on August 27; not working a normal schedule on September 4; and failing to be on-site on September 2. (Compl. 9, Ex. B.) As a result, Plaintiff was placed on probation for 90 days. (*Id*.) In the face of the continued adverse employment actions prior to the request for leave, there is no inference of retaliation predicated on Plaintiff's request for FMLA leave made on November 9.

11

## II.      Title VII

Title VII prohibits employment discrimination based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). At the pleading stage, a plaintiff must allege: (1) that he belongs to a protected class; (2) that he was qualified for the position; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *Sanders v. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004). Defendants argue that Plaintiff's claim under Title VII should be dismissed because Plaintiff does not allege discrimination based on any of the protected classes enumerated in the statute. (Defs.' Mem. 15.) The Court agrees.

Here, the complaint contains no facts to suggest that Plaintiff was discriminated against on the bases of his status in a protected class. Indeed, Plaintiff fails to even identify his race, color, religion, or national origin. Plaintiff only complains of discrimination based on his disability. (*See generally* Compl.) On this basis, Plaintiff's claim must fail. *See, e.g.*, *Maisonet v. Metro. Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 349 (S.D.N.Y. 2009) (dismissing Title VII claim because, *inter alia*, the plaintiff failed to allege his membership in a particular protected class).

## IV.      State and City Law Claims

Defendants urge dismissal of Plaintiff's claims for discriminatory discharge, failure to accommodate, and retaliation under NYSHRL and NYCHRL on the same bases as it urges dismissal of his ADA claims. (Defs.' Mem. 12.) Relevant here, "[a] claim of disability discrimination under the NYSHRL is governed by the same legal standards as govern federal ADA claims. Thus, to the extent that [a plaintiff] brings a state-law disability-discrimination claim, it survives or fails on the same basis as [plaintiff's] ADA claim." *Graves v. Finch Pruyn*

*& Co.*, 457 F.3d 181, 184 n.3 (2d Cir. 2006).  Accordingly, Plaintiff's claims under NYSHRL for failure to accommodate and retaliation are dismissed on the same grounds as Plaintiff's ADA claims.

As to Plaintiff's NYCHRL claims, the law "requires an independent liberal construction analysis in all circumstances, even where state and federal civil rights laws have comparable language."  *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009).  Applying this separate analysis does not alter the conclusion that Plaintiff has failed to sufficiently plead facts to establish that he was denied a reasonable accommodation or facts to suggest a causal connection exists between a protected activity and adverse action taken against him.  Accordingly, Plaintiff's claims under NYCHRL for failure to accommodate and retaliation are dismissed.[4]

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss for failure to state a claim is GRANTED in part and DENIED in part.  Plaintiff's claims for failure to accommodate and retaliation under the ADA; discrimination under Title VII; and failure to accommodate and retaliation under NYSHRL and NYCHRL are dismissed.  Defendants' motion with respect to Plaintiff's claims under the ADA, NYSHRL, and NYCHRL for discriminatory discharge is DENIED.

SO ORDERED.

Dated: Brooklyn, New York  
      November 24, 2020

/s/ LDH  
LaShann DeArcy Hall  
United States District Judge

---

[4] To the extent Plaintiff brings state and city claims on the same basis of any Title VII claim, those claims are dismissed for the same reasons.